## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

KHADIM ALKANANI,                         )
                                         )
                          Plaintiff,     )
        v.                               )
                                         )        Civil Action No. 09-01607 (RWR) (AK)
AEGIS DEFENSE SERVICES, LLC and          )
AEGIS DEFENCE SERVICES LIMITED           )
                                         )
                          Defendants.    )
_____ )

## MEMORANDUM OPINION

This case was referred to the undersigned for the resolution of Plaintiff's Motion to Compel.  (*See* Judge Richard W. Roberts Order [37] at 2; Pl.'s Supp. Mem. [38].)  Plaintiff filed a Supplemental Memorandum on December 21, 2011, seeking to compel Aegis Defence Services Limited ("Aegis UK") to produce four categories of documents.  (Pl.'s Supp. Mem. at 2-3.)  Aegis Defense Services, LLC ("Aegis LLC") and Aegis UK (collectively, "Defendants") filed a Response objecting to Plaintiff's demand for production.  (Defs.' Response. [39] at 2.) The undersigned held a hearing regarding the parties' briefings on August 2, 2012.  Upon consideration of the Supplemental Memorandum and Response, and for the reasons set forth below, Plaintiff's Motion will be granted in part and denied in part.

## I.  BACKGROUND

On May 25, 2004, the U.S. Department of the Army awarded Contract No. W911SO-04-C-002 ("Contract") to Aegis UK for the period from June 1, 2004, through November 30, 2007. (Aegis LLC's Mot. for Summary Judgment [17] at 5.)  The Contract was negotiated and signed

in the United Kingdom.  (*Id.* at 2.)  Pursuant to the terms of the Contract, Aegis UK provided

security-management services, protective services, and anti-terrorism support to various entities

involved in reconstruction efforts in Iraq.  (*Id.* at 5.)

On June 3, 2005, United States Sergeant Khadim Alkanani ("Plaintiff") was returning

from an intelligence mission in Baghdad to the United States Military Facility ("Facility") at the

Baghdad International Airport.  (Pl.'s Compl. [1] at 2.)  Plaintiff's vehicle approached a military

checkpoint approximately one mile from the Main Gate of the Facility.  (*Id.*)  Shortly after

Plaintiff's vehicle travelled through the checkpoint, an unidentified Aegis UK security guard

fired his weapon at Plaintiff's vehicle.  (*Id.* at 3.)  One of the bullets struck Plaintiff in the right

foot.  (*Id.*)

As a result of these events, Plaintiff filed a complaint on August 24, 2009 in the District

of Columbia against Aegis UK and Aegis LLC.  (Pl.'s Compl. at 1.)  Aegis UK is based in

London, England, and incorporated under the laws of England and Wales.  (Deposition of Jeffery

Day [17-1] at 1.)  Aegis UK owns a 99% share of Aegis LLC.  (*Id.* at 4.)  Aegis LLC was

incorporated in Delaware on May 30, 2006, with its principal place of business in the District of

Columbia.[1]  (*Id.*; Aug. 2, 2012 Hr'g.)  Defendant Aegis UK filed a motion to dismiss for lack of

personal jurisdiction and Aegis LLC filed a motion for summary judgment.  (Joint Status Report

[40] at 1.)  Plaintiff, in his Opposition, made substantive arguments, but also argued that

Defendants had not yet produced documents that would aid Plaintiff in making a showing of

personal jurisdiction.  (Pl.'s Opp. to Aegis UK's Mot. to Dismiss [24] at 7; Pl.'s Opp. to Aegis

LLC's Mot. for Summary Judgment [25] at 9.)  Judge Richard W. Roberts, the trial court judge,

---

[1] After the complaint was filed, Aegis LLC moved its principal place of business to its current location in Virginia.
(Day's Dep. at 1.)

denied both motions without prejudice and referred the discovery dispute, styled as a motion to compel, to a magistrate judge.  (Judge Roberts' Order, [37] Nov. 30, 2011 at 2.)

Plaintiff filed a Supplemental Memorandum asking Aegis UK to produce the following four categories of documents to establish personal jurisdiction:[2]

1. Income Tax Returns for the last seven (7) years for the United States, any State, local municipal government, and the Country of England.

2. Communications, correspondence, and contracts in reference to Paragraph No. 34, of the Declaration of Jeffrey Day, stating that "Prior to the incorporation of Aegis, LLC, Aegis UK subcontracted this recruiting and vetting work to an unrelated third party based outside the District of Columbia."

3. A list of all vendors that Aegis UK has conducted business with, for the last seven (7) years, and

4. A list of all United States customers that Aegis UK has conducted business with, for the last seven (7) years.

(Pl.'s Supp. Mem. at 5-6.)

Regarding Plaintiff's first request, Defendant objects to producing any income tax returns.  (Defs.' Response at 2.)  Relating to Plaintiff's second request, Defendants agree to "produce a contract, redacted to remove confidential business information, showing that the unrelated third party referred to by Mr. Day was based in the State of Georgia," but objects to producing further information regarding activities outside the District.  (Id. at 6.)  Regarding Plaintiff's third and fourth requests, Defendant notes that it has already produced lists of its vendors and customers in the District of Columbia and objects to producing lists of vendors or customers outside of the District of Columbia.  (Aug. 2, 2012 Hr'g; Defs.' Response at 6.)

---

[2] At the hearing, Plaintiff's counsel confirmed that the document requests were only directed at Aegis UK and not Aegis LLC.  (Aug. 2, 2012 Hr'g.)

## II.  STANDARD OF REVIEW

a.      __Jurisdictional Discovery__

The court has broad discretion in resolving jurisdictional discovery problems.  *FC Inv.*

*Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1093 (D.C. Cir. 2008).  Even though the standard

for allowing jurisdictional discovery is "quite liberal," *Diamond Chem. Co. v. Atofina Chems.,*

*Inc.*, 268 F.Supp. 2d 1, 15 (D.D.C. 2003), a plaintiff must have a good faith belief that

jurisdictional discovery will show that the court has personal jurisdiction over the defendant.  *See*

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998)

(denying jurisdictional discovery when a plaintiff "did not allege any facts remotely suggesting

that [the defendant] had any connection to the District of Columbia").  Moreover, a plaintiff must

make a detailed showing of what discovery it wishes to conduct or what results it thinks such

discovery would produce.  *Kormendi/Gardner Parterns v. Surplus Acquisition Venture, LLC*,

606 F. Supp. 2d 114, 120 (D.D.C. 2009) (citing *United States v. Philip Morris*, 116 F.Supp. 2d

116, 130 n.16 (D.D.C. 2000)).  When a plaintiff fails to show how jurisdictional discovery would

help uncover relevant information "it would be inappropriate to subject [defendants] to the

burden and expense of discovery."  *NBC-USA Housing Inc., Twenty-Six v. Donovan*, 774 F.

Supp. 2d 277 (D.D.C. 2011) (quoting *COMSAT Corp. v. Finshipyards S.A.M.*, 900 F.Supp. 515,

524 n.4 (D.D.C. 1995)).

Plaintiff's document requests fall under the purview of Federal Rules of Civil Procedure

34.  According to Rule 34, a party may request documents that fall within the scope of Rule

26(b).  Fed. R. Civ. P. 34(a)(1).  Under Rule 26(b), a party's right to discovery is limited to

material that is "relevant to the claim or defense."  Fed. R. Civ. P. 26(b)(1).  Relevant material

"need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

discovery of admissible evidence." *Id.*; *Food Lion Inc. v. United Food & Comm'l Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997). The court may restrict discovery on its own initiative if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative . . .; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit . . . ." Fed. R. Civ. P. 26(b)(2)(C).

b.     **General Personal Jurisdiction**

Although the undersigned's task is not to resolve the question of whether this Court has personal jurisdiction over Defendants, a brief discussion of general personal jurisdiction is necessary to determine whether the requested documents are relevant to establishing personal jurisdiction over Defendants. To determine whether a court has jurisdiction over a non-resident defendant, a court must settle whether jurisdiction is proper under the applicable state long-arm statute and whether it comports with the demands of the due process requirements of the United States Constitution. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945).

Under D.C. Code § 13-334, personal jurisdiction can be established over a non-resident defendant that is "doing business" in the District, even if the claim did not arise from the defendant's conduct in the District. *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002). Where the claim arose outside of the forum, the Due Process Clause requires a foreign defendant to have "continuous and systematic" contacts with the forum to be subjected to jurisdiction in the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct 2846, 2853 (2011); *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S. Ct. 413 (1952). Therefore, the District's statute is co-extensive with the Constitution's due process requirements

and merges into the requirements of due process.  *City of Moundridge, K.S. v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 34 (D.D.C. 2007).

## III.  DISCUSSION

Plaintiff seeks to compel four categories of documents in order to establish general personal jurisdiction over Aegis UK in the District of Columbia.  (Pl.'s Supp. Mem. at 2-3.) Plaintiff makes two principal arguments in support of his requests to take jurisdictional discovery.  First, Plaintiff argues the information from the four categories of documents will reveal that Aegis UK had continuous and systematic contacts with the District, thus creating general jurisdiction and subjecting it to suit in the District (hereinafter, "continuous and systematic argument").  (*Id.*)  Second, Plaintiff argues that information from the first two categories of documents will show that Aegis LLC and Aegis UK are one and the same corporation, because either Aegis LLC is an agent working on behalf of its principal Aegis UK, or Aegis LLC is an alter ego of Aegis UK (hereinafter, "alter ego argument").  (*Id.*)  Under this theory, Aegis LLC's contacts in the District of Columbia would be imputed to Aegis UK for purposes of finding general jurisdiction.  (*Id.*)

a.      **Plaintiff's First Document Request**

Plaintiff requested "Income Tax Returns for the last seven (7) years for the United States, any State, local municipal government, and the Country of England."  (Pl.'s Supp. Mem. at 5-6.) Even though general jurisdiction over corporations typically involves real property located in the forum such as an office, jurisdiction may still be asserted even where a corporation does not have real property in the forum.  *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 511 (D.C. Cir. 2002) ("transactions by mail and telephone could be the basis for [general] personal jurisdiction notwithstanding the defendant's lack of physical presence in the forum"); *see also Quill Corp. v.*

*North Dakota*, 504 U.S. 298, 308, 112 S. Ct. 1904 (1992) ("in 'modern commercial life' it

matters little that such solicitation is accomplished by a deluge of catalogs rather than a phalanx

of drummers: The requirements of due process are met irrespective of a corporation's lack of

physical presence in the taxing state").

     In determining general jurisdiction over corporations, courts consider activities "that are

indicative of . . . 'continuous and systematic' business." *Mich. Nat'l Bank v. Quality Dinette,*

*Inc.*, 888 F.2d 462, 465 (6th Cir. 1989).  More specifically, courts have considered, *inter alia,*

whether a corporation had a territorial presence through property, employees, or interactive

websites, as well as whether the corporation solicited a substantial amount of sales in the forum.

*See, e.g.*, *Azamar v. Stern*, 662 F. Supp. 166, 176 (D.C. Cir. 2009) (subjecting a Maryland

corporation to general jurisdiction in the District where it had seven employees designated to

clean D.C. restaurants); *Mich. Nat'l Bank*, 888 F.2d at 465 (holding the defendant subject to

general jurisdiction in Michigan where it had an independent sales representative and 3 percent

of its total sales Michigan); *Lee v. Walworth Valve Co.* 482 F.2d 297, 299 (4th Cir. 1973) ("sales

. . . aggregating several hundred thousand dollars a year cannot be labeled insubstantial");

*Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 336 (D.C. 2000) (asserting general

jurisdiction over a Maryland grocery store on grounds that the store advertised extensively

through a major District of Columbia newspaper).

     Under Plaintiff's continuous and systematic argument, Plaintiff argues that Aegis UK's

Income Tax Returns would show evidence of its continuous and systematic contacts with the

District.  (Pl.'s Supp. Mem. at 2-3.)  The undersigned agrees with Plaintiff that Aegis UK's

District of Columbia Returns, if they were required to file such returns, could provide

information indicative of Aegis UK's business contacts within the District.  The District of

Columbia Returns would show how much Aegis UK made from contracts in the District in a given year, and other information such as employee wages and offices in the District.[3] Thus, District of Columbia Tax Returns, if filed by Aegis UK, would be relevant to the jurisdictional inquiry based on their potential to show continuous and systematic contacts and will be allowed.

Aegis UK's tax returns in the United Kingdom, or in any other State of the U.S., or in another country, do not have the potential to show its continuous and systematic contacts with the District and therefore are not relevant to Plaintiff's continuous and systematic argument. Only information about Aegis UK's business activity inside the District would be relevant to assessing the continuity and substance of its contacts with the District. Tax returns from other states, for instance, shed no light on Aegis UK's business activity with the District and therefore do not support Plaintiff's argument of continuous and systematic contacts.

Plaintiff's alter ego argument asserts that Aegis UK and Aegis LLC are one and the same corporation. (Pl.'s Supp. Mem. at 2-3.) Although a parent-subsidiary relationship alone is insufficient to establish general jurisdiction, if the parent and subsidiary are not actually separate entities the local subsidiary's contacts can be imputed to the foreign parent. *El-Fadl v. Central Bank of Jordan* 75 F.3d 668, 676 (D.C. Cir. 1996). Considerations that factor into this inquiry are the "nature of the corporate ownership and control; . . . comingling of funds and assets; [and] diversion of one corporation's funds to the other's uses." *AGS Int'l Servs. SA v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 90 (D.D.C. 2004). Federal Income Tax Returns would show gross compensation of officers, receipts and sales, cost of advertising, and the corporation's total assets.[4] This information may help Plaintiff show that the two companies were transacting

---

[3] District of Columbia Corporate Franchise Tax Form, http://otr.cfo.dc.gov/otr/frames.asp?doc=/otr/lib/otr/combined_reporting_2012/2011_d-20._final_rev_032912..pdf (last visited Aug. 7, 2012).
[4] U.S. Corporation Income Tax Return, http://www.irs.gov/pub/irs-pdf/f1120.pdf (last visited Aug. 7, 2012).

business as one and the same during the relevant period.  Thus, under Plaintiff's alter ego

argument, Aegis UK's Federal Income Tax Returns are relevant and must be produced.

Other than Aegis UK's Federal and District of Columbia Income Tax Returns,  Plaintiff's

requested tax returns would not be relevant to his alter ego argument.  During the relevant

period, Aegis LLC had its principal place of business in the District.  (Aug. 2, 2012 Hr'g.)

Plaintiff fails to clarify how the other tax returns-- returns that regard business activity outside

Aegis LLC's principal place of business-- give insight into the relationship between Aegis UK

and Aegis LLC.  Rather, the tax returns would only reflect Aegis UK's relationship with third

parties.  Because Aegis UK's other tax returns are also not relevant to the continuous and

systematic contacts argument, Plaintiff's request for the other tax returns will be denied.  Thus,

under Plaintiff's first category of discovery requests, only Aegis UK's Federal and District of

Columbia Tax Returns will be discoverable.[5]

Defendants argue that seven years of tax returns is overly burdensome because the "only

tax returns even potentially relevant to [the jurisdictional inquiry] are tax returns for the year

2009," when the action was commenced.  (Def.'s Response. at 4.)  The appropriate amount of

time for assessing whether a defendant's contacts with the forum state are sufficiently continuous

and systematic is "a period that is reasonable under the circumstances," *Metro. Life Ins. Co. v.

Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d. Cir. 1996).  "The determination of what period is

reasonable in the context of each case should be left to the court's discretion." *Id.* at 570.  Courts

have found a "reasonable" period to range from three to seven years.  *See, e.g.*, *Helicopteros*, 466

U.S. at 416-19 (examining a foreign corporation's contact with Texas over a seven-year period to

determine whether the corporation was subject to general jurisdiction); *Gates Learjet Corp. v.*

---

[5] If any of the information in Aegis UK's federal or District of Columbia Tax Returns is deemed to be confidential
or proprietary, Aegis UK can request a protective order.

*Jensen*, 743 F.2d 1325, 1329-31 (9th Cir. 1984) (examining defendant's contacts over a three-year period in connection with a general jurisdiction inquiry); *see also Metro. Life Ins. Co.*, 84 F.3d at 569 (holding that the lower court erred in limiting jurisdictional discovery to one-year).

The undersigned disagrees that only tax forms from 2009 could be potentially relevant because "the phrase 'continuous and systematic' necessarily requires that courts evaluate the defendant's contact with the forum state over time." *Id.* To establish general jurisdiction, Plaintiff will need more than one year of information regarding Aegis UK's contacts with the District. *See id.* During the hearing, Defendants' counsel stated that Aegis UK's earliest United States tax filing was in 2006. (Aug. 2, 2012 Hr'g.) The relevant period will thus start in 2006. (*Id.*) The relevant period ends when the complaint was filed, on August 24, 2009. *See Roz Trading Ltd. v. Zeromax Group, Inc.*, 517 F. Supp. 2d 377, 384 (D.D.C. 2007). Accordingly, the undersigned finds that Aegis UK must provide Plaintiff with their District of Columbia and Federal Income Tax Returns, filed from 2006 through 2009.

**b.      Plaintiff's Second, Third, and Fourth Document Requests**

Plaintiff's second request seeks "[c]ommunications, correspondence, and contracts in reference to . . . an unrelated third party based outside the District of Columbia" who Aegis UK subcontracted to do recruiting and vetting work. (Pl.'s Supp. Mem. at 5-6.) The third and fourth categories seek lists of all vendors and United States customers that Aegis UK has conducted business with for the last seven years. *Id.* Defendants provided Plaintiff with lists of their vendors and customers located *inside* the District of Columbia, but objected to providing information about their business activity *outside* the District. (Defs.' Opp. at 6-7.)

The undersigned finds Defendants' objections proper. Regarding Plaintiff's continuous and systematic argument, only information about Aegis UK's business activity inside the District is relevant to assessing the continuity and substance of Aegis UK's contacts with the District.

Plaintiff's second document request relates to a contract Aegis UK maintained with a company outside the District.  No evidence exists that this would shed any light on Plaintiff's contacts within the District.

Plaintiff's third and fourth document requests ask for lists of Aegis UK's vendors and contracts both within the District and elsewhere.  Only vendors and contracts within the District would be relevant to Aegis UK's contacts with the District.  Aegis UK states that they have already provided lists of vendors and contracts within the District.  Assuming these lists are comprehensive, further requests for the same information are cumulative, duplicative, and burdensome.  Thus, under Plaintiff's continuous and systematic argument, requests for categories two, three and four are denied.

Plaintiff further argues that its second document request is relevant to establishing general jurisdiction under the alter ego argument.[6]  Plaintiff's second document request asks for documents regarding a contractual relationship between Aegis UK and a third party.  Aegis LLC was not a party to this contract.  Plaintiff fails to show how the contract would provide insight into the relationship between Aegis UK and Aegis LLC.

Plaintiff's second third and fourth requests are not relevant to Plaintiff's continuous and systematic argument or his alter ego argument.  Therefore, they will be denied.


## IV.  CONCLUSION

For the reasons stated above, the undersigned will grant in part, and deny in part, Plaintiff's Motion to Compel [38] document requests.  Plaintiff's first request will be granted, but limited only to Aegis UK's District of Columbia and Federal Income Tax Returns, filed

---

[6] Plaintiff does not argue that the third and fourth document requests are relevant under the alter ego argument. (Pl.'s Supp. Mem. at 5-6.)

between 2006 and 2009.  Plaintiff's second, third, and fourth requests will be denied.  A separate

order will accompany this memorandum opinion.


Date: August 20, 2012                          _____/s/_____

                                               ALAN KAY
                                               UNITED STATES MAGISTRATE JUDGE