# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                              )

KHADIM ALKANANI,              )

              )

        Plaintiff,       )

              )

       v.            )   Civil Action No. 09-CV-1607 (KBJ)(AK)

              )

AEGIS DEFENSE SERVICES, LLC, )

and AEGIS DEFENCE SERVICES    )

LIMITED,                  )

              )

        Defendants.    )

              )

_____ )

## MEMORANDUM OPINION

Plaintiff Khadim Alkanani ("Alkanani" or "Plaintiff"), a former United States soldier, filed the instant tort action after an employee of a private defense contractor shot him in the foot in Iraq. That defense contractor, Defendant Aegis Defence Services Limited ("Aegis UK"), filed a motion to dismiss the complaint, contending that this Court need not reach the merits of Alkanani's claims because the court lacks personal jurisdiction over the company. (Def.'s Mot. to Dismiss for Lack of Jurisdiction ("Def.'s Mot."), ECF No. 48, at 1.) On August 7, 2013, Magistrate Judge Alan Kay filed a Report and Recommendation that concludes that this case should be dismissed for lack of personal jurisdiction over Aegis UK. (ECF No. 62, at 1.)[1] Plaintiff has filed objections to that report (Pl.'s Mem. of P&A in Resp. to Magistrate's Report and Recommendation, ("Pl.'s Objections"), ECF No. 63), and those objections

---

[1] Page numbers throughout this opinion refer to the page numbers generated by the Court's electronic filing system.

are now before this Court.  Because this Court concurs with Magistrate Judge Kay's conclusions that it cannot exercise either specific or general personal jurisdiction over Aegis UK, the Court will overrule Alkanani's objections and adopt Magistrate Judge Kay's Report and Recommendation.  Consequently, Aegis UK's motion to dismiss for lack of personal jurisdiction is **GRANTED**, and this case is **DISMISSED** with prejudice.  A separate order consistent with this opinion will follow.

## I.    BACKGROUND

### A.  Facts

The parties do not dispute the facts giving rise to Alkanani's allegations.  On June 4, 2005, Alkanani, while on active duty as a U.S. soldier in Iraq, was a part of a vehicle convoy returning from an intelligence mission in the field to a U.S. military facility in Baghdad.  (Compl., ECF No.1, ¶¶ 3-9.)  Aegis UK, a private defense contractor, employed security guards to protect that facility.  (Decl. of Jeffrey Day ("Day Decl."), ECF No. 48-1, ¶¶ 7-8.)  As Alkanani approached a guarded checkpoint near the facility's main gate, at least one Aegis UK security guard overseeing the facility opened fire on Alkanani's vehicle.  (*See* Compl. ¶¶ 11-13 (alleging that three Aegis UK security guards shot at the vehicle); Def.'s Mot. at 8 (maintaining that a single Aegis UK security guard shot at the vehicle).)  One bullet hit Alkanani in the foot, rendering him permanently disabled.  (Compl. ¶¶ 14-17; Def.'s Mot. at 8.)

After sustaining that injury, Alkanani brought suit against two defendants:  Aegis UK and Aegis Defense Services, LLC ("Aegis LLC").  Aegis UK is a private defense contractor headquartered in London, England, and incorporated under the laws of England and Wales.  (Day Decl. ¶ 1.)  Aegis LLC—a company that recruits and runs

background checks on Americans for Aegis UK to hire (Second Supp. Day Decl. ¶ 4)—
is a nearly wholly-owned subsidiary of Aegis UK that is headquartered in the state of
Virginia.  (*Id.* ¶ 24; Second Supp. Decl. of Jeffrey Day ("Second Supp. Day Decl."),
ECF No. 60-1, ¶ 5.)  At this stage of the litigation, the events surrounding the accident
and the extent of Alkanani's injury are not at issue.  Rather, the question before this
Court pertains to whether the Court has personal jurisdiction over Aegis UK, which
depends in large part on the extent of the defendant's business activity in the District of
Columbia, as described in further detail below.

With respect to nature and scope of Aegis UK's business, the record evidence
demonstrates that Aegis UK security guards were stationed in Baghdad to provide
security-management and protective services to entities involved in reconstruction
efforts in Iraq  pursuant to a contract that the U.S. Department of the Army—a sub-
division of the Department of Defense—had awarded to Aegis UK.  (*See* Day Decl. ¶¶
6-8 (referencing Contract No. W911SO-04-S-003 (the "Contract")).)  Further, the
parties negotiated and executed the Contract outside of the District of Columbia:  Aegis
UK negotiated the Contract with government officials located in Virginia, and the
company signed the Contract in the United Kingdom.  (*Id.* ¶ 8.)  It is also beyond
dispute that Aegis UK does not maintain an office, base employees, or keep a bank
account in the District of Columbia.  (*Id.* ¶¶ 10-16, 23, 31-32.)  Moreover, although
Aegis UK owns approximately 99% of Virginia-based subsidiary Aegis LLC (Day Decl.
¶ 38), Aegis LLC manages its operations almost entirely separate from Aegis UK.  (Day
Decl. ¶¶ 26, 29-32.)  The undisputed record evidence indicates that the two companies

share two board members, but they do not share offices or business locations, and they maintain separate payrolls. (*Id.* ¶¶ 23, 28, 30-32.)

### B. Procedural Background

Alkanani filed the instant complaint on August 24, 2009, and served the complaint on Aegis UK by having it delivered to the company's offices in London. (*See* Return of Service/Aff., ECF No. 9.) The five-count complaint alleges that Aegis UK and Aegis LLC are liable for: (1) negligence, (2) negligence in hiring training and supervision, (3) intentional infliction of emotional distress, (4) negligent infliction of emotional distress, and (5) gross negligence. (Compl. ¶¶ 54-71.)

In their required joint statement to the Court submitted under Federal Rule of Civil Procedure 16, both Defendants represented an intent to file a dispositive motion in this matter: Aegis UK stated that it intended to seek dismissal for lack of personal jurisdiction, while Aegis LLC stated that it intended to file a motion for summary judgment on the grounds that it was an improper party. (Joint Report to the Court Pursuant to Fed. R. Civ. P. 16.3(c), ECF No. 8, at 2.) The Court permitted the parties to engage in limited discovery regarding these threshold issues. (*See* Scheduling Order, ECF No. 10, ¶ 1 (allowing for discovery "limited to issues raised in" the "motions mentioned in" the parties' joint report).) At the close of that limited discovery period, Aegis LLC filed a motion for summary judgment, contending that there is no basis for holding Aegis LLC liable for the tort of its parent company, Aegis UK (Aegis LLC's Mot. for Summ. J., ECF No. 47), and Aegis UK filed a motion to dismiss for lack of personal jurisdiction (*see* Def.'s Mot. at 1).

The Court referred both motions directly to Magistrate Judge Kay (ECF No. 46), who ultimately recommended that this Court grant both motions. (*See* Report and Recommendation; Report and Recommendation Regarding Summ. J., ECF No. 61.) Neither party objected to Magistrate Judge Kay's recommendation that the Court grant Aegis LLC's motion for summary judgment, and this Court adopted that recommendation, agreeing with Magistrate Judge Kay's conclusion that Alkanani had failed to establish that any theory—including alter ego theory, successor liability theory, or agency theory—supported Aegis LLC's legal liability for the acts of its parent company, Aegis UK. *Alkanani v. Aegis Def. Servs., LLC*, No. 09-CV-1607, 2013 WL 5203613, at *1 (D.D.C. Sept. 16, 2013).

Alkanani did object, however, to Magistrate Judge Kay's recommendation that this Court grant Aegis UK's motion to dismiss for lack of personal jurisdiction. (*See* Pl.'s Objections at 5-6.) On September 4, 2013, Aegis UK filed a response to Alkanani's objection. (Def.'s Resp. to Pl.'s Objections, ECF No. 64.) In addition, on January 21, 2014, Aegis UK submitted a letter notifying this Court of the Supreme Court's recent decision on general jurisdiction in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), (*see* Def.'s Notice of Suppl. Auth., ECF No. 66), and Alkanani responded to that correspondence. (Pl.'s Resp. re Notice of Suppl. Auth., ECF No. 67.)[2] Thus, before this Court at present is Aegis UK's motion to dismiss for lack of personal jurisdiction, Magistrate Judge Kay's Report recommending that this Court dismiss the

---

[2] Notably, Defendant filed its notice of supplemental authority as a *letter*, and Alkanani responded in kind. (*See* Def.'s Notice of Suppl. Auth., ECF No. 66; Pl.'s Resp. re Notice of Suppl. Auth., ECF No. 67.) The Local Rules of this Court direct that "correspondence shall not be directed by the parties or their attorneys to a judge," unless the judge requests otherwise, LCvR. 5.1(b), which means that the parties' letters constitute a technical violation of the court's rules. This Court has considered both filings despite this procedural error.

case for lack of personal jurisdiction, Alkanani's objections to the magistrate judge's report, Aegis UK's letter noting supplemental authority, and Alkanani's response to Aegis UK's correspondence.

## II.    LEGAL FRAMEWORK

### A.  Motions To Dismiss For Lack Of Personal Jurisdiction Pursuant To Rule 12(b)(2)

Aegis UK seeks to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(2) on the grounds that the court lacks personal jurisdiction over the company. Rule 12(b)(2) specifically "authorizes a motion to dismiss based upon the traditional defense that the court lacks jurisdiction over the defendant's person, which raises a question as to whether the controversy or defendant has sufficient contact with the forum to give the court the right to exercise judicial power over defendant." *Wiggins v. Equifax Inc.*, 853 F. Supp. 500, 501 (D.D.C. 1994) (citation omitted).  The question regarding whether a defendant has sufficient forum contacts "typically implicates a [state's] jurisdictional statute or rule and also quite frequently the Due Process Clause of the Constitution as well."  5B Charles A. Wright & Arthur R. Miller, Federal Practice And Procedure § 1351, at 266 (3d ed. 2004).  Indeed, the Supreme Court recently confirmed that "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Daimler*, 134 S.Ct. at 753 (citation omitted)).

As relevant here, the District of Columbia has "long-arm" and service statutes that speak to the exercise of personal jurisdiction over foreign individuals and entities. *See* D.C. Code § 13-423 (long-arm statute); *id.* § 13-334 (service on foreign

corporations).  In short, D.C. law authorizes personal jurisdiction over foreign corporations in two ways:

> a foreign corporation, acting directly or through an agent, is subject to personal jurisdiction in the District if, among other things, it has "transact[ed] any business" here.  D.C. Code § 13-423(a)(2001). When jurisdiction is based on this section, the claim for relief must "arise[ ] from" the acts conferring jurisdiction over the defendant. D.C. Code § 13-423(b).  This is sometimes referred to as specific jurisdiction.  In the alternative, D.C. Code § 13-334(a) may confer general jurisdiction over corporations "doing business" in the District of Columbia.

*Gonzalez v. Internacional De Elevadores, S.A.*, 891 A.2d 227, 232 (D.C. 2006) (alterations in original).  As explained further below, specific jurisdiction requires a nexus between a foreign corporation's particular contact with the forum state and the claim that the plaintiff asserts.  *See Novak-Canzeri v. Saud*, 864 F. Supp. 203, 206 (D.D.C. 1994) (citation omitted).  General jurisdiction, on the other hand, permits the plaintiff to bring any sort of claim against a foreign corporation in D.C.—"regardless of whether [the defendant's] contacts gave rise to the claim in the particular case[,]"—so long as the defendant has "sufficiently systematic and continuous contacts with the forum state" such that it is fair for the forum's courts to entertain any claim against the entity.  *Brooks v. Harris*, 808 F. Supp. 2d 206, 208 (D.D.C. 2011).  This means that, in D.C. as elsewhere, there is a practical distinction between the exercise of personal jurisdiction over a foreign corporation based on its "*doing* business when that term signals local activity sufficient to support all-purpose (general) jurisdiction over a defendant[,]" and the exercise of personal jurisdiction over a corporation that is *transacting* business, [when] invoked as a basis for specific adjudicatory authority over

claims relating to the very business transacted[.]"  *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987) (emphasis added) (internal quotation marks and citation omitted).

With respect to constitutional requirements, an exercise of personal jurisdiction is ordinarily considered to comply with Due Process if the defendant has sufficient contacts with the forum such that exercising jurisdiction over the defendant would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (explaining that due process requires "minimum contacts").  District of Columbia courts have clarified that the Due Process Clause presents no additional hurdle for a plaintiff who can demonstrate that the defendant meets either the "transacting business" test of D.C. Code § 13-423(a)(1) or is "doing business" in the District for the purpose of § 13-334(a).  Thus, a D.C. court need only engage in a single analysis of the defendant's contacts with the District of Columbia under the standards established in the long-arm and service statutes because sufficient contacts under the D.C. Code and proper service is all that Due Process requires.  *See Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513 (D.C. Cir. 2002); *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329-30 (D.C. 2000).

When personal jurisdiction is challenged, the plaintiff must demonstrate that each defendant is subject to personal jurisdiction in the forum.  *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990) (citation omitted).  The plaintiff bears the "burden of establishing a factual basis for the [Court's] exercise of personal jurisdiction over the defendant[,]" *Shibeshi v. United States*, 932 F. Supp. 2d 1, 2 (D.D.C. 2013) (alteration in original) (quoting *Crane*, 894 F.2d at 456), and to meet that

burden, the plaintiff "must allege specific facts connecting [the] defendant with the forum[.]" *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (first alteration in original) (citation omitted). If the plaintiff contends that the court has specific jurisdiction—*i.e.*, that his claim arises from a specific contact that the defendant had with the forum—plaintiff must allege facts demonstrating that the nonresident defendant had contact with the forum and that that contact bears a "discernable relationship" to the plaintiff's claim. *Shoppers Food Warehouse*, 746 A.2d at 333. Alternatively, where general jurisdiction is alleged, the plaintiff must demonstrate that the defendant "purposefully avail[ed] itself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475.

Where, as here, the parties have engaged in jurisdictional discovery, the plaintiff's burden is to prove the existence of personal jurisdiction by the preponderance of the evidence. *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 90 F. Supp. 2d 15, 20 (D.D.C. 2000). The court need not confine itself to the allegations in the complaint as with other motions to dismiss; rather, it can consider materials outside of the pleadings, including declarations and evidence produced during the course of jurisdictional discovery. *Frost v. Catholic Univ. of Am.*, 960 F. Supp. 2d 226, 231 (D.D.C. 2013) (citation omitted). Moreover, the court need not treat all of the plaintiff's allegations as true when deciding a personal jurisdiction question. *Am. Action Network, Inc. v. Cater Am., LLC*, No. 12-1972, 2013 WL 5428857, at *2 (D.D.C. Sept. 30, 2013) ("Unlike a Rule 12(b)(6) motion to dismiss, the Court need not treat all of a plaintiff's allegations as true when making a personal jurisdiction determination.").

But the court still must resolve any factual discrepancies in the plaintiff's favor. *Id.* (citing *Crane*, 894 F.2d at 456).

### B. Standard Of Review Of A Magistrate Judge's Report And Recommendation

Under Local Civil Rule 72.3(a), district court judges can specifically request that a magistrate judge prepare a report recommending findings of fact and a disposition with respect to the case. *Id.*; *see also* 28 U.S.C. § 636(b)(1). District court judges may choose to accept, reject, or modify the recommendations of the magistrate judge in whole or in part. LCvR 72.3(c); 28 U.S.C. § 636(b)(1). The district court reviews any objections the parties make to the magistrate judge's recommendations *de novo*. LCvR 72.3(c); *Houlahan v. Brown*, No. 11-1240, 2013 WL 5548839, at *1 (D.D.C. Oct. 8, 2013) (citation omitted). "If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Houlahan*, 2013 WL 5548839, at *1 (citation omitted).

## III. ANALYSIS

In this case, Alkanani has objected to the magistrate judge's findings and conclusions regarding the lack of either specific or general personal jurisdiction over Aegis UK, and this Court has conducted a *de novo* review of the matter. At issue is whether Magistrate Judge Kay was correct to conclude (1) that specific jurisdiction cannot be maintained because there was an insufficient nexus between Alkanani's injuries and the contacts that Aegis UK had in the District of Columbia (*see* Report and Recommendation at 8); (2) that general jurisdiction is not appropriate because Aegis

UK did not engage in enough activity in the District of Columbia to give rise to such jurisdiction (*see id.* at 5-6); and (3) that Coalition Provisional Authority Order 17—an order that the transitional government of Iraq issued shortly after the war in Iraq began —did not establish a basis for the exercise of personal jurisdiction over Aegis UK (*see id.* at 11).[3]  As explained further below, while Aegis UK did negotiate a contract with the U.S. Department of Defense pursuant to which Aegis UK employees were stationed in Iraq to provide security services at the base where Alkanani was shot, this Court cannot exercise specific jurisdiction over Aegis UK on that basis for several reasons: (1) there is no allegation that those contract negotiations took place in the District of Columbia; (2) even so, neither negotiations nor contracts with a federal government entity qualify as a contact in the District of Columbia for the purposes of specific jurisdiction; and (3) even if the Contract could qualify as a contact for the purpose of D.C.'s long-arm statute, Alkanani's tortious injury does not bear a close enough nexus to the Contract to give rise to specific jurisdiction.  Additionally, this Court agrees with Magistrate Judge Kay that it cannot exercise general jurisdiction over Aegis UK because Plaintiff's allegations regarding various contacts that Aegis UK has had in the District of Columbia (*e.g.*, meetings and negotiations with the U.S. government, its website, U.S. tax filings, and trips to D.C. to meet with non-government clients), even

---

[3] Magistrate Judge Kay also concluded that the manner in which Alkanani served Aegis UK violated D.C. law in a manner that precludes the exercise of general jurisdiction in any event.  (*See* Report and Recommendation at 6-7).  Because this Court concludes that Aegis UK's contacts with the District of Columbia are insufficient to establish that the company was "doing business" in the District of Columbia, it declines to reach the question of whether the statutory service requirements—which by their terms only apply when a company is "doing business" in the District—were satisfied.  *See* D.C. Code § 13-334; *see also, e.g.*, *Sweetgreen, Inc. v. Sweet Leaf, Inc.*, 882 F. Supp. 2d 1, 4 (D.D.C. 2012) (finding the defendant's contacts in D.C. insufficient for an exercise of general jurisdiction, and declining to discuss service); *The Urban Inst. v. FINCON Servs.*, 681 F. Supp. 2d 41, 46 (D.D.C. 2010) (same); *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 12 (D.D.C. 2009) (same); *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 108 (D.D.C. 2005) (same).

if true, do not establish a sufficiently extensive presence in the forum to give rise to general jurisdiction. The Court also concludes that nothing in Coalition Provisional Order 17 independently confers jurisdiction over Aegis UK. Consequently, this Court agrees that it does not have personal jurisdiction over Aegis UK, as Magistrate Judge Kay found, and therefore the complaint must be dismissed.

## A. This Court Cannot Exercise Specific Jurisdiction Over Aegis UK

As noted above, "[a] plaintiff seeking to establish specific jurisdiction over a non-resident defendant must establish that specific jurisdiction comports with the forum's long-arm statute, D.C. Code § 13-423(a), and does not violate due process." *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1094-95 (D.C. Cir. 2008) (citing *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000)).[4] Of the seven bases for specific jurisdiction that are set forth in the D.C. long-arm statute, only the "transacting business" requirement of section 13-423(a)(1) is applicable here, and, indeed, it is the only jurisdictional prong that Alkanani advances.

---

[4] Section 13-423(a) of the D.C. Code extends personal jurisdiction over a nonresident defendant where the plaintiff's claim arises from the defendant's

    (1) transacting any business in the District of Columbia;

    (2) contracting to supply services in the District of Columbia;

    (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

    (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if [the defendant] regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

    (5) having an interest in, using, or possessing real property in the District of Columbia;

    (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or

    (7) marital or parent and child relationship in the District of Columbia[.]

(Pl.'s Objections at 18 ("Plaintiff has satisfied D.C. Code § 13-423(a)(1) because Aegis UK admittedly 'transacted business' in the District of Columbia.").)  To meet the requirements of personal jurisdiction under the "transacting business" prong of the D.C. long-arm statute, a plaintiff must prove:

> First, that the defendant transacted business in the District of Columbia; second, that the claim arose from the business transacted in D.C.; and third, that the defendant had minimum contacts with the District of Columbia such that the Court's exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice.

*Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 227 (D.D.C. 2005) (internal quotation marks and citation omitted).  Because the reach of "transacting business" jurisdiction is coextensive with the reach of constitutional due process, *see Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004); *Gonzalez*, 891 A.2d at 234, the first and third questions are essentially the same.  Thus, the Court must answer two questions:  whether the defendant has "transacted business," and whether the plaintiff's injury arises from that business.

Neither of these questions can be answered affirmatively in this case.

### 1. Was The Negotiation Of The Iraq Security Services Contract A Business Transaction In The District of Columbia?

Alkanani maintains that his injury arose from the Contract between Aegis UK and the Army because the Contract established Aegis UK's presence in Iraq and that the negotiation and execution of that Contract provides a basis for the exercise of personal jurisdiction over Aegis UK.  (Pl.'s Objections at 26-27.)  It is well established that the "negotiation, formation, and performance of contracts constitute a business transaction under § 13-423(a)(1)." *Brunson*, 404 F. Supp. 2d at 230 (D.D.C. 2005) (citing *Helmer*, 393 F.3d at 205, and *Ulico Cas. Co. v. Fleet Nat'l Bank*, 257 F. Supp. 2d 142, 146

(D.D.C. 2003)); *see also Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981) ("It is now well-settled that the 'transacting any business' provision embraces [certain] contractual activities of a nonresident defendant[.]" (citation omitted)).  But the Contract between Aegis UK and the Department of Defense cannot be the basis for the exercise of personal jurisdiction in this case because it is equally well established that contract negotiations *with the federal government* are excluded from the jurisdictional analysis.  Moreover, even if the Contract did count as a relevant business transaction, there is no allegation or evidence that that the parties here negotiated or executed the Contract in the District of Columbia.

With respect to the first point, while contract negotiations ordinarily constitute business transactions upon which personal jurisdiction may be based for the purpose of D.C.'s long-arm statute, there is a settled "government contacts" exception to this general rule.  Under the government contacts exception, a nonresident's entry into the District of Columbia for "the purpose of contacting federal governmental agencies cannot serve as a basis for personal jurisdiction."  *Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55, 62 (D.D.C. 2006) (quoting *Freiman v. Lazur*, 925 F. Supp. 14, 24 (D.D.C. 1996)); *United States v. Ferrara*, 54 F.3d 825, 831 (D.C. Cir. 1995) (noting that the government contacts exception provides that contacts with federal agencies within the District of Columbia "will not give rise to personal jurisdiction"); *Brunson*, 404 F. Supp. 2d at 235 (same); *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 44 (D.D.C. 2003) (same).  Indeed, "D.C. Courts have long carved out a 'government contacts' exception" that applies when non-resident corporations "keep an office in the District for the purpose of maintaining contact with Congress and governmental

14

agencies." *Sierra Club v. Tenn. Valley Auth.*, 905 F. Supp. 2d 356, 362 (D.D.C. 2012) (collecting cases). Under the government contacts exception, any non-resident defendant's contacts with the government are essentially excluded from "the jurisdictional calculus." *Savage*, 460 F. Supp. 2d at 62 (holding that, under the government contacts exception, defendant's contacts with the Department of Defense are excluded from the personal jurisdiction analysis); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786-87 (D.C. Cir. 1983) (same with respect to the Department of the Interior); *Freiman*, 925 F. Supp. at 24 (same with respect to the U.S. Copyright Office). Because it is the practice of this Circuit to discount contacts with the federal government when determining whether a non-resident defendant's contacts provide a basis for the exercise of personal jurisdiction in D.C., the Court agrees with Magistrate Judge Kay that the Contract for security services that Aegis UK negotiated with the Department of Defense cannot serve as a "business transaction" upon which specific jurisdiction may be predicated.

Significantly, even if the government contacts exception did not apply to exclude the Contract at issue here from the Court's assessment of specific personal jurisdiction, the Contract still could not serve as the required "business transaction" for § 13-423(a)(1) purposes because there is no allegation or evidence that the Contract was negotiated or executed in the District of Columbia. The principal location of the Department of Defense is unquestionably Arlington, Virginia—which makes the state of Virginia the relevant forum for disputes arising from dealings with that agency. *See Jackson-Spells v. Rumsfeld*, 457 F. Supp. 2d 39, 40 n.1 ("[T]he principal office of the Department of Defense is in Arlington, Virginia, not the District of Columbia.");

*Spencer v. Rumsfeld*, 209 F. Supp. 2d 15, 18 (D.D.C. 2002) (same). Alkanani's

complaint does not allege otherwise, which means that there is no factual basis for any

inference that the Contract negotiations constituted a business transaction that took

place in the District of Columbia for the purpose of the long-arm statute. Similarly, the

record evidence indicates that Aegis UK actually signed the Contract in the United

Kingdom (Day Decl. ¶ 8), and Alkanani has not only failed to allege that the Contract

was executed in the District of Columbia, he has made no allegations or argument

related to the place of execution at all. (*See, e.g.*, Pl.'s Opp'n at 9 (arguing only that

Aegis UK secured a contract with the U.S. government, "a party located in the District

of Columbia"); Pl.'s Objections at 23 (in response to "Aegis UK's argument that the

[C]ontract was not entered in [the] District of Columbia[,]" arguing that physical

presence in the forum is not required).) As noted at the outset, it is the plaintiff's

burden to demonstrate that the requirements of the long-arm statute have been satisfied,

and Alkanani's failure to allege that the Contract was negotiated or signed in the

District of Columbia is fatal to his contention that the Contract can be considered a

"business transaction" for the purpose of § 13-423(a)(1).

> 2.  Does Alkanani's Claim "Aris[e] From" A Business Transaction That Occurred In The District Of Columbia?

Under the D.C. long-arm statute, if a plaintiff has proven that the defendant

"transacted business" in the District of Columbia, he must also show that his claim

"aris[es] from" that business. *See* D.C. Code § 13-423(a); *see also Mwani v. bin Laden*,

417 F.3d 1, 12 (D.C. Cir. 2005) (quoting *Helicopteros Nacionales de Colombia, S.A. v.

Hall*, 466 U.S. 408, 414 (1984)); *Brunson*, 404 F. Supp. 2d at 227 (citation omitted).

This Court's conclusion that the Contract does not constitute a relevant business

transaction, and that in any event there is no factual basis for concluding that the Contract was negotiated or executed in the District of Columbia, necessarily disposes of the "arises from" inquiry. However, Magistrate Judge Kay reached this secondary question and concluded that there was no nexus between any business the Aegis UK conducted in D.C. and Alkanani's injury—a conclusion that Alkanani strenuously rejects. (*See* Pl.'s Objections at 26-27.) This Court deems it worthwhile to explain its own assessment of the nexus requirement and its application in the context of this case.

The statutory nexus requirement is essential to an exercise of specific jurisdiction because "[t]he claim itself must have arisen from the business transacted in the District or there is no jurisdiction[]" by the very terms of the long-arm statute. *Novak-Canzeri*, 864 F. Supp. at 206 (citation omitted); *see also* D.C. Code § 13-423(b) ("When jurisdiction over a person is based solely upon this section [§ 13-423(a)], only a claim for relief arising from acts enumerated in this section may be alerted against him."). Notably, the operative phrase is "aris[e] from." "Some courts have interpreted the phrase 'arise [from]' as endorsing a theory of 'but-for' causation, while other courts have required proximate cause to support the exercise of specific jurisdiction[.]" *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (internal citations omitted); *see also Shoppers Food Warehouse*, 746 A.2d at 332-34 (explaining courts' various approaches to defining "arise from"). For the purpose of the D.C. long-arm statute, it is clear that "arise from" is to be interpreted "flexibly and synonymously with 'relate to' or having a 'substantial connection with[,]'" which, at a minimum means that the claim raised must "have a discernible relationship" to the defendant's business transacted in the district. *Rundquist v. Vapiano SE*, No. 09-1107,

2012 WL 5954706, at *8 (D.D.C. Nov. 9, 2012) (citation omitted); *see also Shoppers Food Warehouse*, 746 A.2d at 332.

Alkanani argues that his injury bears a "discernible relationship" to Aegis UK's contacts in the District of Columbia because he was "injured as a result of the services [Aegis UK] was providing pursuant to the [C]ontract." (Pl.'s Objections at 27.) But as Magistrate Judge Kay concluded, the fact that the Contract was for services pursuant to which Aegis UK placed security employees in Iraq, and that those employees ultimately acted to injure Alkanani, does not establish the necessary relationship between Contract and claim for personal jurisdiction purposes as a matter of law. This is so primarily because Alkanani "was neither a party nor a beneficiary of the contract" and, indeed, he has brought a *tort* claim, not an action for breach of contract. (Report and Recommendation at 10; *see also* Compl. ¶¶ 54-71.) Courts have appropriately concluded that an injury sounding in tort does not "arise from" a contract for services for the purpose of specific jurisdiction. *See, e.g.*, *Gonzalez*, 891 A.2d at 232 (holding that a personal injury claim based on an elevator falling did not arise from a maintenance contract between her employer and the elevator manufacturer because she sued in tort and not for a breach of contract); *see also Collazo v. Enter. Holdings, Inc.*, 823 F. Supp. 2d 865, 873 (N.D. Ind. 2011) (plaintiff's personal injury claim based on an accident aboard a trolley en route to pick up her rental car did not arise out of car rental agreement for the purpose of Indiana's long-arm statute); *Martino-Valdez v. Renaissance Hotel Mgmt. Co.*, No. 10-1278, 2011 WL 5075658, at *3 (D.P.R. Aug. 25, 2011) (plaintiff's personal injury claim based on a slip-and-fall in a hotel room did not arise out of the agreement to reserve the room for the purpose of Puerto Rico's long-

arm statute). And this legal conclusion is clearly compelled under the circumstances presented in this case, given that Alkanani's injury occurred *abroad* and D.C.'s long-arm statute specifically addresses tort claims in two sub-sections that are distinct from the provision that brings the contract here within the statute's purview. *See* D.C. Code § 13-423(a)(3), (4). The tort-related sub-sections provide for specific jurisdiction over a nonresident defendant only when the plaintiff's claim involves tortious injury that occurs *in* the District of Columbia—not injury that occurs elsewhere, like Alkanani's. *See* D.C. Code §§ 13-423(a)(3), (a)(4) (allowing for personal jurisdiction over claims arising from the defendant's "causing tortious injury *in* the District of Columbia by an act or omission" that took place inside or outside the District of Columbia (emphasis added)); *see also Lott v. Burning Tree Club, Inc.*, 516 F. Supp. 913, 916 (D.D.C. 1980) (noting that § 13-423(a)(3) "clearly separates the act from the tortious injury and affords personal jurisdiction over non-residents only when both act and injury occur in the District" (citation omitted)).[5] Alkanani cannot expect this Court to interpret the statutory nexus requirement to permit the exercise of specific personal jurisdiction over Aegis UK under circumstances in which other provisions in that same statute would clearly prohibit such jurisdiction. *Cf. FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (internal quotation marks and citations omitted)).

---

[5] Indeed, tortious acts that occur outside of the District of Columbia do not give rise to specific jurisdiction unless the defendant "*expressly aimed* its tortious conduct at the forum[,]" and the harm caused by the defendant was primarily felt in the forum. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002) (emphasis in original) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 255-66 (3d Cir. 1998), and *Wallace v. Herron*, 778 F.2d 391, 394-95 (7th Cir. 1985)).

Consequently, in addition to the fact that the Contract does not qualify as a business transaction that took place in the District of Columbia for the purpose of § 13-423(a)(1), this Court agrees with Magistrate Judge Kay that Alkanani's injury cannot be considered to have "aris[en] from" Aegis UK's alleged business transaction (the Contract) for the purpose of § 13-423(b).

**B. The Court Cannot Exercise General Personal Jurisdiction Over Aegis UK**

Having concluded that the D.C. long arm statute does not permit the exercise of specific jurisdiction over Aegis UK, the Court turns to consider the alternative basis for the exercise of personal jurisdiction: where the defendant's contacts in the forum are so extensive that the defendant can be haled into court in the forum for any type of claim.

District of Columbia law permits an exercise of "general jurisdiction" over a foreign corporation if the corporation is "doing business" in the District. *See* D.C. Code § 13-334(a); *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (noting that, when there is general personal jurisdiction, the court can "resolve both matters that originate within the [forum] and those based on activities and events elsewhere" (citing *Helicopteros*, 466 U.S. at 414 & 415 n.9)); *see also Gorman*, 293 F.3d at 509 (citations omitted); *Azamar v. Stern*, 662 F. Supp. 2d 166, 173 (D.D.C. 2009) ("[General jurisdiction] provides for personal jurisdiction over a nonresident defendant even if the claim at issue does not arise from the defendant's activities in the District of Columbia when the defendant is 'doing business' in the District." (citation omitted)). Section 13-334(a) of the D.C. Code provides:

> In an action against a foreign corporation *doing business in the District*, process may be served on the agent of the corporation or person conducting its business, or, where he is absent and cannot be found, by leaving a copy of the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court.

D.C. Code §13-334(a) (emphasis added). "Although on its face § 13-334(a) appears only to specify proper methods of service, the District of Columbia Court of Appeals has held that compliance with the statute gives rise to personal jurisdiction over a foreign corporation doing business in the District." *Gorman*, 293 F.3d at 509 n.1 (citing *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C. 1981)); *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 673 n.7 (D.C. Cir. 1996), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305, 310 n.4 (2010).

Unlike the statutory provision governing specific jurisdiction, which sets forth the particular scenarios in which it may apply, the D.C. Code does not include a definition of the phrase "doing business," nor does it provide examples of what it may entail. However, D.C. courts have made clear that Section 13-334(a)'s "doing business" jurisdiction reaches as far as the limits of constitutional due process. *Day v. Cornér Bank (Overseas) Ltd.*, 789 F. Supp. 2d 150, 155-56 (D.D.C. 2011) ("[T]he reach of doing business jurisdiction under § 13-334(a) is co-extensive with the reach of constitutional due process." (quoting *FC Inv. Grp.*, 529 F.3d at 1092)). And it is well settled that, under the Due Process Clause, general jurisdiction over a foreign corporation is only proper if the defendant's contacts in the forum are "continuous and systematic." *Int'l Shoe*, 326 U.S. at 317; *Johns v. Newsmax Media, Inc.*, 887 F. Supp. 2d 90, 95-96 (D.D.C. 2012) (noting that due process requires a defendant's contacts in

the forum to be so "continuous and systematic" that requiring the defendant to answer any claim in the forum's courts "does not offend traditional notions of fair play and substantial justice").

Applying due process principles to the D.C. general jurisdiction statute, courts have held that in order to establish that a corporation is "doing business" in the District of Columbia for the purposes of general jurisdiction under § 13-334(a), a plaintiff must demonstrate that a company has a "continuing corporate presence in [D.C.] with the aim of advancing its objectives [here]" and must conduct "substantial business" in the forum. *Khatib v. Alliance Bankshares Corp.*, 846 F. Supp. 2d 18, 26-27 (D.D.C. 2012) (citations omitted)); *see also El-Fadl*, 75 F.3d at 675; *Gonzalez*, 891 A.2d at 233. Moreover, and perhaps even more significant, the Supreme Court recently emphasized that "engag[ing] in a substantial, continuous, and systematic course of business" in the forum is not, in and of itself, enough for general jurisdiction to comport with due process. *Daimler*, 134 S. Ct. at 757-58. Rather, the defendant's contacts and affiliations with the forum must be so extensive, so constant, and so prevalent that they render the defendant "essentially at home" in the forum. *Id.* (holding that a company's maintenance of several facilities and a regional office in the forum state, coupled with significant sales in the forum state, was not enough to make the company "essentially at home" in the forum for the purposes of general jurisdiction).

Considering how these principles might apply to the instant case, it is undisputed that the archetypal bases for the exercise of general jurisdiction over a corporation—*i.e.,* having its place of incorporation or principal place of business in the forum in which it is sued—are not present here. Nevertheless, Alkanani maintains that Aegis

UK's meetings and negotiations with the U.S. government in D.C.; its website; its U.S. tax filings; and its executives' trips to D.C. to meet with non-government clients are sufficient to satisfy the general jurisdiction standard. As explained further below, however, this Court cannot exercise general jurisdiction over Aegis UK on these bases because Aegis UK's contacts with the federal government are not to be included in the jurisdictional analysis, and because the company's other activities in the District of Columbia are not so substantial, continuous, or systematic to render Aegis UK "essentially at home" here. *Daimler*, 134 S. Ct. at 757-58.

1. Aegis UK's Meetings And Contract Negotiations With Government Officials

Alkanani argues, first of all, that Aegis UK's principal client is the United States government, which is seated in the District of Columbia, and that this single client has provided Aegis UK with "the majority of its revenue—hundreds of millions of dollars." (Pl.'s Objections at 7; *see also* Pl.'s Opp'n at 19 (same).) In this regard, Alkanani points out that Aegis UK executives made 48 trips to the District of Columbia area to meet with U.S. government officials in order to negotiate the very Contract at issue here (though the actual negotiations took place in Virginia) and/or to visit the Iraqi embassy in the District of Columbia in connection with the Contract. (*See* Ex. A to White Decl., ECF No. 48-3 (spreadsheet of Aegis UK employees' trips to the District); Report and Recommendation at 3 (noting the 48 business trips made "for the purpose of meeting government officials or the Iraqi Embassy"); *see also* Pl.'s Objections at 8 (focusing on Aegis UK's business trips to the District); *id.* at 23 (arguing that "Aegis has availed itself of the privileges and protections of the District of Columbia[ ] by signing a contract with the Department of Defense (DoD) located in DC").) However, as

Magistrate Judge Kay determined, the government contacts exception thwarts this line of argument. (Report and Recommendation at 8 n.7, 9-10.)

As explained in Part III.A.1 *supra*, pursuant to the government contacts exception, a nonresident's entry into the District of Columbia for "the purpose of contacting federal governmental agencies cannot serve as a basis for personal jurisdiction." *Savage*, 460 F. Supp. 2d at 62 (quoting *Freiman*, 925 F. Supp. at 24); *Ferrara*, 54 F.3d at 831 (noting that the government contacts exception provides that contacts with federal agencies within the District of Columbia "will not give rise to personal jurisdiction"). This means that, if the government contacts exception applies, none of Aegis UK's visits to the District of Columbia to meet with United States government agencies or the Iraqi embassy enter into the jurisdictional equation. *See Savage*, 460 F. Supp. 2d at 62.

To forestall this result, Alkanani maintains that the government contacts exception does not apply to the government meetings at issue here because, in addition to having contact with the government, Aegis UK *also* had other private business dealings in the District of Columbia. (Pl.'s Objection at 12 (contending that the government contacts principle "is not applicable here because, apart from contract with the government agencies, Aegis UK has a number of contacts with the District of Columbia[.]"); *see also id.* at 9 ("The discovery documents produced show that Aegis UK has provided services to private entities/individuals in the District of Columbia, apart from the U.S. Army.").) Alkanani is unable to provide any authority for the proposition that otherwise excludable government contacts are to be counted for general personal jurisdiction purposes whenever the defendant has other non-governmental

contacts in the District of Columbia, and the case law in this area suggests the opposite. *See, e.g.*, *Savage*, 460 F. Supp. 2d at 59 (citation omitted) (finding no general jurisdiction over defendant whose government contacts were excluded from consideration despite the fact that the company had also placed advertisements in D.C. publications). Moreover, and in any event, Alkanani has not provided enough information about Aegis UK's "private business dealings" to permit a conclusion that those contacts qualify as "doing business" in the District such that his bootstrapping theory would even be plausible in this context. *See infra* Part III.B.2.c.

Accordingly, Aegis UK's contacts with the federal government, including its executives' trips to D.C. to meet and negotiate contracts with government agencies, cannot form the basis of general jurisdiction, as Magistrate Judge Kay properly concluded. (*See* Report and Recommendation at 8 n.7 (rejecting Alkanani's request to include Aegis UK's contract with the U.S. government as a minimum contact because the U.S. government does "not constitute contacts within the District of Columbia for purposes of jurisdictional analysis.").)

### 2. Aegis UK's Other Contacts With The District Of Columbia

Setting aside Aegis UK's contacts with the federal government, Alkanani contends that general jurisdiction still can be exercised over Aegis UK on the basis of the company's website, tax returns, and the various trips that Aegis UK executives made to D.C. to meet with non-governmental entities. For the following reasons, this Court concludes otherwise.

*a. Aegis UK's Website*

Alkanani argues that Aegis UK's website gives rise to general jurisdiction because the website advertises that Aegis UK has an office in the District of Columbia and because the website states that clients have access to a "round-the-clock tailored threat assessment system" and "various other restricted online secure services." (Pl.'s Objections at 13-14.)[6] Aegis UK takes issue with Alkanani's characterization of its website on two grounds. First, Aegis UK notes that, although its website once referred to a D.C. office, such reference was only intended to suggest a D.C.-*area* office, and the website was actually referring to subsidiary Aegis LLC's headquarters in nearby Virginia, not any office in the District of Columbia. (Def.'s Resp. at 20.) Second, Aegis UK contends that its website is too passive to constitute a basis for general jurisdiction that comports with due process because the website only offers clients the ability to *access* information, not to create accounts or engage in any transactions in D.C. (*Id.* at 20-21.)

Courts in this circuit have considered similar website-related arguments, and have concluded that, in order for a defendant's internet presence to give rise to general jurisdiction, residents of the forum must use the website in a continuous and systematic way. *FC Inv. Grp.*, 529 F.3d at 1092; *Atlantigas*, 290 F. Supp. 2d at 52 ("The question is not whether District of Columbia residents 'can' transact business in the District with the non-resident defendant through the defendant's website, but if they actually 'do[.]'" (citing *Gorman*, 293 F.3d at 512-13)). Moreover, even if actual use of a website by

---

[6] The link that Alkanani provides to the page of Aegis UK's website that purportedly advertises a D.C. office appears to be inoperable at present. (*See* Pl.'s Objections at 11 n.1 (citing http://www.aegisworld.com/index.php/about-us/global-experience).) As of the date of this opinion, Aegis UK's website advertises an office in the U.S., without further detail; however, Aegis UK concedes that its website once mentioned an office in the D.C. region. (Def.'s Resp. at 20.)

D.C. residents is established, general jurisdiction is only appropriate if the website is commercial in nature, and if its features are so interactive that it operates, in essence, like a virtual business establishment—*i.e.*, the website permits users to engage fully with the company in a manner that suggests that it was purposefully developed in order for the company to maintain systematic and continuous contact with residents of the forum state. *See GTE New Media Servs.*, 21 F. Supp. 2d at 38 (citations omitted).

The paradigmatic website that qualifies as "doing business" in the forum for the purpose of general personal jurisdiction is a website that enables the residents of the forum to start and complete business transactions with the defendant entirely online. *See Gorman*, 293 F.3d at 513 (finding the website that defendant, an out-of-state securities broker, operated may have been sufficient to exercise general jurisdiction where the website enabled D.C. residents to open brokerage accounts, transmit funds electronically, and buy and sell securities). By contrast, a website that merely provides residents of the forum with access to information is not enough to establish jurisdiction. *See FC Inv. Grp.*, 529 F.3d at 1092 ("An essentially passive website through which customers merely access information is insufficient [for jurisdiction]." (internal quotation marks and citation omitted); *GTE New Media Servs.*, 199 F.3d at 1349-50 ("[P]ersonal jurisdiction surely cannot be based solely on the ability of District residents to access defendants' websites, for this does not by itself show any persistent course of conduct by the defendants in the District."); *see, e.g.*, *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 121 (D.D.C. 2005) (noting that access to information on a website alone is not even a sufficient contact for specific jurisdiction); *Lewy v. So. Poverty Law Ctr., Inc.*, 723 F. Supp. 2d 116, 125 (same). When a website falls somewhere in the

middle—when it mostly serves as a source of information but also solicits financial contributions in the forum—the trend within this district is to require other non-internet contacts in the forum in order to exercise jurisdiction. *See, e.g.*, *Blumenthal v. Drudge*, 992 F. Supp. 44, 55-56 (D.D.C. 1998) (exercising jurisdiction over a defendant whose website distributed news to D.C. residents, and solicited and actually received financial contributions from D.C. residents, where that defendant also regularly visited D.C. for business purposes); *Heroes, Inc. v. Heroes Found.*, 958 F. Supp. 1, 5 (D.D.C. 1998) (exercising jurisdiction over the defendant company that solicited financial donations on its home page as well as in advertisements in local newspapers).

In light of the relevant case law and applicable legal standards regarding when a website is sufficient to give rise to general personal jurisdiction, this Court agrees with Magistrate Judge Kay that Aegis UK's website does not establish a basis for the exercise of general jurisdiction over Aegis UK. First of all, Alkanani has failed to adduce any evidence that D.C. residents actually used Aegis UK's website, let alone in a continuous and systematic way, and absent such evidence the website cannot give rise to jurisdiction. *See FC Inv. Grp.*, 529 F.3d at 1092; *Atlantigas*, 290 F. Supp. 2d at 52.[7] Moreover, although Aegis UK's website advertises that the company's customers receive a "round-the-clock tailored threat assessment system" (Pl.'s Objections at 13), there is nothing in the record to suggest that anyone, much less D.C. residents, can sign up for Aegis UK's services or otherwise become an Aegis UK customer through the website, nor has Alkanani alleged that website users can enter transactions for Aegis

---

[7] This Court need not accept as true Alkanani's bare allegation that D.C. residents have used Aegis UK's website. *See Am. Action Network*, 2013 WL 5428857, at *2.

UK's services in a way that would constitute "doing business" over the internet. *Cf.*

*Gorman*, 293 F.3d at 512-13.

Finally, the fact that Aegis UK's website ostensibly holds itself out as having a

"D.C. Office," when such is arguably not the case, is beside the point: whatever the

Defendant may *say* about its degree of contact with a forum, in order to assert general

jurisdiction over a defendant, the court still must find facts establishing the requisite

*actual* connection to the forum. *See, e.g.*, *Estate of Thompson ex rel. Thompson v.*

*Mission Essential Pers., LLC*, No. 11-547, 2013 WL 6058308, at *6 (M.D.N.C. Nov.

14, 2013) (finding the defendant's website advertisement of an office in the forum was

not sufficient to establish general jurisdiction, and noting that the Court was still

required to consider the evidence of Defendant's business interactions within the state

to determine if those actions were enough for general jurisdiction); *see also Akerblom v.*

*Ezra Holdings Ltd.*, 848 F. Supp. 2d 673, 684 (S.D. Tex. 2012)*, aff'd,* 509 F. App'x 340

(5th Cir. 2013) (deciding that a plaintiff could not establish jurisdiction over the

defendant based on the defendant's business presentation that mentioned an office in

the forum when the office in question did not actually exist). Here, the Court concludes

that, for the reasons already discussed, Aegis UK's website itself is not a sufficient

connection.

### b. Tax Returns That Aegis UK Filed In The District of Columbia

Alkanani next asserts that tax returns Aegis UK filed in the District of Columbia

have jurisdictional implications. (Pl.'s Objections at 8 (maintaining that Aegis UK's

tax returns demonstrate that the company engaged in "a significant amount of business"

in the District of Columbia).) During the course of discovery, Aegis UK produced

federal tax returns that it filed in the District of Columbia for the years 2006 through 2009, and those returns reported nearly one million dollars of income that its subsidiary, Aegis LLC, had earned. (Pl.'s Opp'n at 7; Pl.'s Objections at 20; Def.'s Resp. at 22.) Magistrate Judge Kay touched on the tax returns in passing, noting that such returns do not reflect any income derived from Aegis UK's own business activities in the District of Columbia (Report and Recommendation at 3), and concluding that there was no general jurisdiction as a result of these returns in part because there was no agency relationship through which Aegis LLC's business activity could be imputed to Aegis UK (*id.* at 6).

This Court agrees with that conclusion for two reasons. First, to the extent that Alkanani's argument is that Aegis UK's act of filing is itself a contact with D.C., there is no support in law or logic for the proposition that the simple act of forwarding tax forms into a forum state gives rise to general personal jurisdiction in that forum. As has already been stated repeatedly, a defendant's contacts with a forum must be continuous, systematic, and extensive, and it is patently obvious that the mere act of filing a return falls far short of this rigorous standard. Second, and even more significant, the tax returns at issue here were not indicative of the extent of Aegis UK's contacts with the District; indeed, it is undisputed that the forms at issue in the instant matter reported only D.C. income that subsidiary Aegis LLC had received, rather than any money that Aegis UK had earned in this forum. (Def.'s Resp. at 22; *see* Report and Recommendation at 3.) This Court has already concluded that Aegis LLC is not properly considered to be the alter ego of Aegis UK for jurisdiction purposes, *Alkanani*, 2013 WL 5203613, at *1; therefore, Aegis LLC's D.C. earnings are irrelevant to the

instant personal jurisdiction analysis. *Compare El–Fadl,* 75 F.3d at 675–76 ("[I]f parent and subsidiary are not really separate entities, or one acts as the agent of the other, the local subsidiary's contacts can be imputed to the foreign parent." (internal quotation marks and citations omitted)). In this same vein, the Supreme Court has emphatically rejected the theory that foreign corporations can be subject to general jurisdiction whenever they have an in-state subsidiary or affiliate, calling it an inappropriately "sprawling view of general jurisdiction[.]" *Daimler*, 134 S. Ct. at 760 (citation omitted). Therefore, under the appropriately narrow view of the proper scope of personal jurisdiction, parent Aegis UK cannot be haled into court in the District of Columbia solely on the basis of its relationship with subsidiary Aegis LLC, no matter how much business Aegis LLC has done in this forum.

In short, Alkanani's attempt to base general jurisdiction over Aegis UK as a result of its having filed fax forms in D.C. fails because neither the fact that Aegis UK submitted documents to D.C. tax authorities that reported Aegis LLC's income, nor the fact that Aegis LLC had income earned from the District of Columbia to report, serves to establish that Aegis UK had the requisite contact with the District of Columbia for the exercise of general personal jurisdiction over the company.

### c. Aegis UK's Private Business Dealings In D.C.

Finally, the Court also rejects Alkanani's argument that the contacts and communications Aegis UK employees had with non-governmental residents of the District of Columbia when visiting this area to solicit business and attend conferences are sufficient to establish that the exercise of general jurisdiction over Aegis UK would be proper.

31

As noted, the key to demonstrating the propriety of general jurisdiction over a defendant is showing that the defendant had frequent and sustained contacts with residents of the forum state that were directed at doing business in the forum such that the defendant was "essentially at home" there. *Daimler*, 134 S. Ct. at 751 (citation omitted); *see also Khatib*, 846 F. Supp. 2d at 26 (citation omitted). Here, the record establishes that in the five years between 2004 and 2009, personnel from Aegis UK made just over 100 trips to the District of Columbia area. (White Decl. ¶ 3; Ex. A to White Decl.) This may seem like a significant number of visits to the area, but about one third of these trips were actually made to visit Aegis LLC's office in Virginia (*see* White Decl. ¶ 3; Ex. A to White Decl.), so they hardly qualify as "doing business" with D.C. residents in the District of Columbia. Another 48 trips were made for the purposes of meeting with government officials in Virginia to negotiate contracts or visiting the Iraqi embassy in the District of Columbia in connection with those contracts (White Decl. ¶ 3; Ex. A to White Decl.; Def.'s Mot. at 23 n.6)—these are government contacts that are excluded from the analysis for the reasons explained above.

This means that the sum total of the relevant appearances that Aegis UK employees made in the District of Columbia between 2004 and 2009 were (1) the approximately 37 times that Aegis UK employees visited D.C. for conferences and to negotiate or oversee certain nongovernmental contracts with D.C. corporate residents regarding work performed outside the District of Columbia (White Decl. ¶ 3; Ex. A to White Decl.), and (2) the handful of Aegis UK's remaining trips to the District of Columbia related to managing certain existing contracts with D.C.-based companies; exploring potential business acquisitions in the District of Columbia; and meeting with

banks, attorneys, and special interest groups here.  (White Decl. ¶ 3; Ex. A to White Decl.; Report and Recommendation at 3-4.)  With respect to the first category of nongovernmental contacts, Alkanani has not shown that attending conferences and engaging in negotiations regarding contracts for work to be performed *outside* the District of Columbia qualifies as "doing business" in the District of Columbia.  *SEC v. Lines Overseas Mgmt., Ltd.*, No. 04-302, 2005 WL 3627141, at *7 (D.D.C. Jan. 7, 2005) (even frequent contacts in D.C. were not enough when they did not pertain to doing business in D.C.).  Regardless, it is clear that three dozen such trips over the course of five years—less than one per month, on average—does not a "continuing corporate presence" make.  *See Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 196 (D.D.C. 2007) (noting that defendant's regular yearly meetings with U.S. officials and sporadic visits to the forum to enter contracts with private entities were not enough for general jurisdiction); *AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 76-77 (D.D.C. 2004) (fourteen trips to the forum over two years to discuss business funding were not enough for general jurisdiction).

Similarly, the few trips that were specifically directed toward managing ongoing contracts with D.C.-based businesses or acquiring additional nongovernmental business were unquestionably infrequent, and certainly not enough to render Aegis UK "essentially at home" in D.C., as required for personal general jurisdiction.  *See, e.g.*, *AGS Int'l Servs.*, 346 F. Supp. 2d at 76 (finding that employees visiting D.C. on average over twice per month was not systematic and continuous enough to create a continuing corporate presence).  And that is even setting aside the distinction between trips aimed at *soliciting* business and those directed toward *doing* business, which could reduce the

number of relevant Aegis UK contacts in the District of Columbia even further, given that the majority of the potential business opportunities that Aegis UK employees traveled here to solicit were never realized.  (*See* White Decl. ¶ 3; Ex. A to White Decl. at 2-48.)

In sum, over Alkanani's objection, this Court agrees with Magistrate Judge Kay's finding that Aegis UK's activities in the District of Columbia—*e.g.*, its (1) contract negotiations and meetings with the U.S. government; (2) website; (3) tax filings; and (4) contacts with non-government clients—did not render the company "essentially at home" here for jurisdictional purposes.  None of these activities is sufficient to establish the propriety of general jurisdiction over Aegis UK standing alone, and even taken together, these activities fall short of the kind of "systematic and continuous" contacts with the District of Columbia that is required in order for this Court to exercise personal jurisdiction over Aegis UK consistent with D.C. law and the Due Process Clause.  *See Daimler*, 134 S. Ct. at 746; *see also AGS Int'l Servs.*, 346 F. Supp. 2d at 76 (noting that even when a company has a local office in D.C., receives funding from a D.C.-based bank, is in regular contact with the U.S. government and foreign embassies, and has employees with leadership positions in local trade associations , the company was not "doing business" in D.C. for the purposes of general jurisdiction).  Consequently, the Court concludes that it cannot exercise general jurisdiction over Aegis UK.

### C.  Coalition Provisional Authority Order 17 Does Not Provide A Separate Basis For Jurisdiction

Having failed to establish personal jurisdiction over Aegis UK through the traditional routes, Alkanani tries a different tack.  He contends that Coalition

Provisional Authority Order Number 17 ("CPA Order 17")—an order that the

transitional government of Iraq issued shortly after the war in Iraq began—confers

personal jurisdiction over Aegis UK with respect to lawsuits filed in the District of

Columbia, and that Aegis UK should be estopped from arguing otherwise in light of its

reference to that Order in the context of prior litigation in this district.  (Pl.'s Opp'n at

7, 14, 17-18; Pl.'s Objections at 6, 27-28.)  Once again, this Court's analysis is

consistent with Magistrate Judge Kay's reasoned conclusion:  CPA Order 17 does not

give rise to jurisdiction over Aegis UK.

      The leader of the Coalition Provisional Authority issued CPA Order 17 "during

the early days of the U.S. occupation of Iraq."  *Harris v. Kellogg, Brown & Root Servs.,*

*Inc.*, 796 F. Supp. 2d 642, 649 (W.D. Penn. 2011) (quoting *Galustian v. Peter*, 591 F.3d

724, 728 (4th Cir. 2010)).  The order provides, in relevant part, that "[c]ontractors shall

be immune from Iraqi legal process with respect to acts performed by them pursuant to

the terms and conditions of a Contract or any sub-contract thereto."  Coal. Provisional

Auth. Order No. 17 (June 27, 2004) ("CPA Order 17") § 3.[8]  The order further states

that personal injury claims that arise from the acts or omissions of military contractors

and their personnel for activities relating to performance of their contracts

> shall be submitted and dealt with by the Sending State whose personnel
> (including the Contractors engaged by that State), property, activities, or
> other assets are alleged to have caused the claimed damage, *in a manner
> consistent with the Sending State's laws, regulations and procedures*.

*Id*. (emphasis added).  Alkanani contends that the order's language directing that claims

"*shall* be subject to the exclusive jurisdiction of their Sending States" indicates that

CPA Order 17 automatically confers jurisdiction over Aegis UK in the District of

---

[8] *Available at* http://www.usace.army.mil/Portals/2/docs/COALITION_PROVISIONAL.pdf (last visited
Mar. 24, 2014).

Columbia.  (Pl.'s Objections at 28.)  But Alkanani makes this argument without citing

any authority, and it is clear that the argument has no merit.

The appropriate analysis of CPA Order 17 "begins with its text."  *Harris*, 796 F.

Supp. 2d at 653 (quoting *Abbott v. Abbott*, 560 U.S. 1, 10 (2010) (internal quotation

marks omitted).  As Magistrate Judge Kay observed, the plain language of CPA Order

17 does not, in and of itself, create jurisdiction in any given forum, much less in any

state or federal court in the United States.  (*See* Report and Recommendation at 11.)

*Cf. United States v. Kellogg Brown & Root Servs., Inc.*, 800 F. Supp. 2d 143, 156 n.5

(D.D.C. 2011) ("In a 'suit on a statute'—that is, a suit in which the statute itself grants

the recovery, *creates the jurisdiction*, or permits special damages—the plaintiff must

show both that he is within the class the statute sought to protect and that the harm done

was one that the statute was meant to prevent." (quoting *Abrahams v. Young & Rubicam*

*Inc.*, 79 F.3d 234, 237 (2d Cir. 1996)).  And even assuming *arguendo* that the District

of Columbia is the relevant "Sending State,"[9] CPA Order 17 clearly requires that the

applicable process for handling claims be one that accords with the Sending State's law.

*See* CPA Order 17 § 18; *see also Daimler*, 134 S. Ct. at 752-53 (noting that an exercise

of personal jurisdiction must comport with the constitution and the relevant state long-

arm statute).  This Court has already concluded that D.C.'s long-arm statute and

constitutional due process preclude the exercise of specific or general personal

jurisdiction over Aegis UK under the circumstances presented here.  Thus, this Court

agrees with Magistrate Judge Kay that nothing in the text of CPA Order 17 authorizes

---

[9] Notably, neither party provides authority establishing that the District of Columbia is the relevant
"Sending State" here for the purposes of CPA Order 17, which raises the question of whether CPA
Order 17 would give rise to jurisdiction in District of Columbia courts even under Alkanani's
interpretation.

this Court to exercise jurisdiction over Aegis UK. (*See* Report and Recommendation at 11 (CPA Order 17 cannot "abrogate the U.S. Constitutional requirements of due process" or the relevant statutory requirements, and "does not have the power to confer jurisdiction when none would otherwise exist[.]").).

Finally, the Court rejects Alkanani's contention that Aegis UK's own prior interpretation of CPA Order 17, or the fact that the company apparently consented to the court's jurisdiction in this district in the context of another matter, somehow prevents Aegis UK from objecting to the exercise of personal jurisdiction with respect to the instant claim. (Pl's Objections at 27 (arguing for estoppel based on Aegis UK's alleged attempt to "use [CPA Order 17] as both a sword and a shield"); *see also id.* ("Aegis UK has used this Order to obtain this Court's jurisdiction when it was seeking justice, but now inconsistently argues that the Order cannot confer jurisdiction over it.").) Alkanani attached to the instant complaint a copy of a trademark infringement complaint that Aegis UK filed in the United States District Court for the District of Columbia on March 6, 2008, in which Aegis UK references CPA Order 17. (Aegis UK's Compl. in *Aegis Def. Servs. Ltd. v. Aegis Mission Essential Personnel, LLC*, No. 08-cv-407, Ex. A to Compl., ECF No. 1-1.) Notably, Alkanani provides no detail regarding Aegis UK's alleged argument that CPA Order 17 gave rise to personal jurisdiction over the defendant in that case. This lack of specificity, in and of itself, undermines Alkanani's argument. In any event, it appears that Aegis UK contended that the court had subject-matter jurisdiction over the parties' activities in Iraq pursuant to CPA Order 17, *not* personal jurisdiction. (*Id.* ¶ 5.) Indeed, Aegis UK's trademark complaint itself belies Alkanani's point, as Aegis UK was a plaintiff in that action, and

the company alleged an entirely different basis for personal jurisdiction over the defendant in that case. (*Id.* ¶ 4 (alleging that the defendant "maintains an office in the District of Columbia, does business in the District of Columbia, and is subject to suit here").)[10]

For all of the foregoing reasons, CPA Order 17 does not create an independent basis for personal jurisdiction over Aegis UK.

## IV.  CONCLUSION

Because there is no basis for exercising personal jurisdiction over Aegis UK as explained above, this Court adopts Magistrate Judge Kay's Report and Recommendation with respect to its conclusions regarding personal jurisdiction.[11] Accordingly, as set forth in the accompanying order, Alkanani's objections are

---

[10] Notably, even if Aegis UK had alleged that CPA Order 17 provided a basis for personal jurisdiction over the defendant in the context of its trademark infringement action, Alkanani's argument would still fail because neither waiver nor estoppel applies to prevent Aegis UK's denial of personal jurisdiction in this case. First, it is well established that consent to personal jurisdiction in one case does not waive the right to assert lack of personal jurisdiction in another case in that same forum. *See In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 100 (D.D.C. 2008) (citing *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 n.5 (2d Cir. 1991)). Moreover, judicial estoppel only applies when a party prevails on the merits in earlier litigation. *See Robinson v. District of Columbia*, No. 13-1297, 2014 WL 317846, at *3 (D.D.C. Jan. 29, 2014) (quoting *Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010)). The docket in Aegis UK's earlier case clearly establishes that Aegis UK voluntarily dismissed its complaint, so Aegis UK did not have occasion to argue, and a court certainly had no occasion to accept, that CPA Order 17 conferred personal jurisdiction over the defendant in that case. (*See Aegis Def. Servs. Ltd. v. Aegis Mission Essential Personnel, LLC*, No. 08-cv-407, Notice of Dismissal With Prejudice, ECF No. 3.) What is more, the prior complaint relates to a trademark infringement action, so it is not at all clear that any argument or ruling about the extent to which CPA Order 17 confers jurisdiction over such a claim in the context of the prior action would be applicable here. Accordingly, even if Aegis UK had asserted that CPA Order 17 was the basis for personal jurisdiction over the defendant in the earlier case that Alkanani cites, Aegis UK would not be estopped from taking a contrary position under the circumstances presented.

[11] In light of this conclusion, the Court need not, and does not, address the question of venue, which Magistrate Judge Kay raised and considered *sua sponte*.

overruled, Defendants' motion to dismiss for lack of personal jurisdiction is

**GRANTED**, and this case is **DISMISSED** with prejudice.

Date:  March 26, 2014

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge